Gaston, Judge.
 

 After stating the case as above, proceeded: '
 

 The statement in the case “ that an account of thear-
 
 *76
 
 tides sold was kept by tbe executors, and that on tbe slave being bid off by tbe plaintiff, be was entered on tbe account as tbe purchaser,” and
 
 those
 
 parts of tbe charge bi'ought before us for review which direct tbe jury, “ that tbe auctioneer was to be regarded as the agent of the vendors, that if be knocked down tbe slave to the plaintiff’s bid, and tbe slave was entered on tbe account of sales as.purchased by the plaintiff, and if a delivery was then made by the auctioneer to tbe plaintiff, although he bad no right to tbe
 
 possession
 
 of tbe slave till a compliance with the terms of tbe sale,
 
 yet the title
 
 passed to him, and the death of the slave in the interim would have been bis loss,” — and furthermore, “ that if after tbe purchase it was agreed between the executors and tbe plaintiff to postpone tbe taking of tbe bond till next day, or if in fact the sale did not close till next day, and bond with approved surety vvas tendered on tbe day following tbe bid,
 
 that
 
 gave a right to tbe plaintiff to demand tbe possession,” — all these seem designed to call upon this court for an exposition of the statute of 1819 “ to makq void parol contracts for the sale of land and slaves.”— Were it necessary for a correct determination of the cause to decide whether in this case there was such a written memorandum of tbe contract, signed by the vendors or by any person thereunto authorised by
 
 them,
 
 as conformed
 
 to the
 
 requisitions of this statute, we should much regret that the facts in relation to the account of sales were not more fully set forth. Weshould then desire to know whether the terms of the sale were expressed in it; whether it was in fact signed by any person, and if so by whom ; whether it purported to contain the full evidence .of the several contracts of sale, or was a mere memorandum to help the memory of the executors, and contained but the names of the articles set up for sale, of the persons who became the highest bidders, and the prices at which the articles were severally bid off. It appears to us however, wholly unnecessary to decide this question, if in truth it was intended to be presented for our decision. The plaintiff has not instituted an action against the executors for a breach, or non-perform-
 
 *77
 
 anee of their contract, but sues the defendant for a detion of his slave, which lie alleges became his property by virtue of the executed contract of the executors. If the executors were bound in law to comply with their contract for a sale but refused to execute it, the property in the slave was not changed, and the plaintiff cannot maintain this action. If the executors were not bound to execute the contract, but nevertheless did execute it, the plaintiff became the legal owner of the slave, and is entitled to this remedy against any person who withholds from him the possession of the slave. The act of 1819 applies to executory contracts and to these only.
 
 (Choate
 
 v.
 
 Wright, ante
 
 2
 
 vol.
 
 p. 289
 
 .)
 

 
 *76
 
 Whether the entry of a purchaser’s name & bid in an account of auction sales, made by the vendor, is a note or memorandum within the meaning of the act of 1819,
 
 (liev. c.
 
 1016.) Qul
 

 Questions under the act of 1819 avc.ding pa.ol contracts for the
 
 *77
 
 sale of slaves &c. aotions^foTthe11 breach of execu-tory contracts-
 

 The case of
 
 Choatev. Wright {ante
 
 2 vol. p. 289,) approved.
 

 The act of 1784,
 
 (Rev.
 
 c. 225,) and 1792,
 
 (Rev.
 
 c. 363,) furnish the law by which the caséis to be decided. The first requires that sales of slaves shall be in writing attested by at least one credible witness, and shall be proved and registered, in all cases where the claims of creditors or purchasers may be affected. The second enacts that all sales of slaves
 
 bona Jide
 
 made and accompanied with the
 
 actual
 
 delivery of the slave or slaves to the purchaser, and which would have been held good and valid before the act of 1784, shall be good and valid without a bill of sale. The plaintiff and the defendant both claim the property in dispute as purchasers from the executors of
 
 Thomas. It
 
 became necessary for the plaintiff to show that the executors had transferred the slave to him, and this could only be done by exhibiting such a written transfer as the act of 1784 requires, or proving such a sale and delivery as the act of 1792 declares shall be valid. No written transfer was produced or alleged
 
 ;
 
 and the plaintiff undertook to prove a
 
 bo-na Jide
 
 sale accompanied with the actual delivery of the slave. No evidence was given of a delivery in anyway by the executors or either of them
 
 personally.
 
 It is not stated that the plaintiff had the actual possession of the slave, issued any orders to, or exercised any dominion over him, before he tendered his bond to the executors and demanded a delivery from them. When this tender and demand were made, the executors repudiated the
 
 *78
 
 contract, and refused to make the delivery — and after this refusal sold the slave to the defendant. Unless the iacts which occurred at the time the negro was bid 0j£ an j on the evening of that day, that is to say. the declaration of the crier to the negro, (for it could not have been
 
 to the plaintiff')
 
 ‘there is your master,’ the negro bei n g present, and the executors, who might have heard the observation, saying nothing to the contrary, and the agreement between the executors and the plaintiff to defer until the next day the taking of the bond and surety for the purchase money — unless these facts amounted in law to an actual delivery, or furnished evidence from which the jury might infer the fact of an actual delivery, the alleged transfer to the plaintiff was invalid, because it was not accompanied by a delivery. It is with rc-fe-rence to these facts that the most important part of the charge remains to be examined. “The court instructed the jury that a corporal delivery was not necessary ; that if the the slave was present and declared by the owners or the auctioneer, to be the plaintiff’s property, so that the plaintiff
 
 might
 
 take hold of him, and no objection then stated, it amounted in law to a .delivery.” As there was no evidence of such a declaration by the owners, and as the charge stales the Iaw to be the same whether the declaration were made by
 
 them
 
 .or by the auctioneer, the appellant has a right
 
 to
 
 require that the instruction shall be considered as though the words “ by the owners” were stricken from it.
 

 Delivery of a slave in order to the vendee need not he by manual jbu^mustrák'by sóme act proving unequivocallythat the possession is changed.
 

 We are compelled to dissent from this instruction.— Unquestionably the actual delivery required by the act °f U92, may be made without a manual touching of the body of the slave, but we hold that
 
 it
 
 must be manifest‘ by some act or acts, Irom winch it can be seen or clearly inferred, that the possession of the slave, has been unequivocally relinquished by the vendor and taken by the vendee. The statute is emphatic in requir- . , 111 g not delivery merely, but
 
 actual delivery,
 
 and we think that nothing short of such a change of possession as manifests that the bargain is consummated, and that nothing remains to he done between the parties in reja
 
 *79
 
 tion to the subjeei matter of the bargain, will satisfy this requirement. To prevent frauds and perjuries, to shut the door on the misapprehensions and contradictory statements and misrepresentations of witnesses, ami to give authenticity and notoriety to the transaction, such a delivery must be proved, or a written, attested and registered transfer produced, whenever the title of a creditor of the vendor, or a purchaser from him, is attempted to be disturbed by a sale alleged to have been previously made. If the declaration of the crier and silence of the executors constituted such a delivery, then the negro became absolutely the property of the plaintiff; the condition in the terms of sale, that bond and approved surety should be given before the close of the sale was waived, anti the executors were to give a personal credit for the purchase money to the plaintiff. It cannot be believed that the parties, either the plaintiff or the executors, understood what was
 
 said
 
 by the crier (for nothing was
 
 doneJ
 
 as amounting
 
 to stick
 
 a delivery. After this declaration we find them negotiating on the subject of paying or securing the payment of the purchase money, and postponing the completion of this very material part of the bargain until the next day_ The vendors too were executors, making sale of the personal estate of their testator. The law imposed it as a duty on them to take security from the purchasers before they delivered the property; and from the advertisement down to the tender of the plaintiff and his demand of a delivery, and of their refusal to make it, there is not a circumstance indicating an intent to part with the possession, until the price was paid or secured to their entire satisfaction. Was the declaration of the crier evidence from which an inference could be drawn, that
 
 he
 
 undertook to waive this part of the bargain, and to deliver possession before the price was paid or ser cured ? We think not. The executors were in truth the auctioneers, and the crier but their servant. The advertisement for the sale was made not by him,
 
 but
 
 by the executors. The bonds were to be taken not to hjm, but to the executors, and the sufficiency of
 
 *80
 
 the sureties passed on, not by him, but by them. The account of sales is kept, not by him, but by them, and
 
 they
 
 (the case states) generally attended to and managed the sales. No agency of any sort is shown to have been performcd.by him except to cry the property, and without some evidence of an authority to act further, the law cannot imply that he possessed it. If this then, was his only authority, the declaration must be understood as made with reference to it, and as merely the-annunciation to the slave, awaiting anxiously the result of the competition, of the persen ascertained to be the highest bidder, and who of course was expected to become his master. If indeed, after this declaration the plaintiff had proceeded to exercise unequivocal acts of ownership over the slave — as by sending him to the plaintiffs home or avowedly claiming the possession of him as then the plaintiffs property,
 
 such acts
 
 done in the presence and with the knowledge and acquiescence of the executors, might have been left to the jury as evidence (whether strong or weak I shall not pretend to say) of a waiver on their part of any further act to be done for the completion of the bargain, and an absolute delivery of the slave by them to the plaintiff. But the declaration of the crier at the moment the bidding terminated,
 
 “
 
 there is your master/’
 
 although the slave
 
 and the owners were present — although the plaintiff might take hold of him, but did not — the owners saying nothing and doing nothing — there being no apparent change of the possession — no money then paid, nor secured to be paid, nor personal credit to be given, is not, we think cither a delivery in law, or evidence from which a jury could infer a delivery in fact.
 

 
 *79
 
 A crier who does nothing but proclaim the bids made at an auction sale, is the servant of the ven dor, and has no authority to bind, him in any respect.
 

 
 *80
 
 It is the opinion of the court that the judgment rendered in the Superior Court bo reversed, and a new trial granted.
 

 Pee. Ctjkiam — Judgment eeyeesed.